## MILLER ET AL. v. MURRAY.

1. CORPORATIONS AND STOCKHOLDERS.—The courts will not, as a general rule, at the suit of a stockholder, interfere with the internal management of a corporation. To maintain such a suit a stockholder must be able to show that otherwise there will be a failure of justice.

2. WHEN A STOCKHOLDER MAY SUE OR DEFEND.—Where the cause of action belongs to the corporate entity it is only where the corporation, either actually or virtually, refuses to institute or defend an action that one or all the stockholders can appear in its behalf.

3. WHAT MUST APPEAR TO GIVE A STOCKHOLDER A STANDING IN COURT.—To give a stockholder a standing in court it must be shown that he cannot obtain redress either through the managing body, or the stockholders.

4. THE RULE IN THE FEDERAL AND STATE COURTS.—In the federal courts a demand upon the managing board of the corporation, be

fore a suit can be maintained by a stockholder, is made necessary by rule 94. In the state courts, however, such a demand may be dispensed with under certain circumstances, as where the corporate management is under the control of the guilty parties.

5. WHEN REDRESS SHOULD BE SOUGHT THROUGH THE STOCKHOLDERS.— Where the complaining stockholder, and those co-operating with him, own a majority of the capital stock of the company and time has permitted, or will permit, an effort must be made to obtain relief through the stockholders or a showing must be made that such an effort would be unavailing to entitle the stockholder to sue.

6. STOCK PLEDGED—WHO MAY VOTE.—Under the Colorado statutes an owner who has pledged his stock may represent the stock at all meetings of the stockholders and vote accordingly.

*Appeal from District Court of Arapahoe County.*

THIS action was brought by appellee as plaintiff below. In the complaint it is alleged, *inter alia*, that on and prior to May 30, 1887, he was the owner and controlled 330 shares of capital stock of The Denver Fire Brick Co. This company was organized in 1880 under the laws of the state of Colorado by the plaintiff Murray, and the defendants, Schwartz and Lynn, and one W. J. Shiek. The business of the organization was to manufacture fire brick and like products. The par value of the capital stock of the company was fixed at $100,000, of which $33,000 was paid in immediately by the plaintiff Murray and his wife and daughter; $31,000 by the defendants Schwartz and Lynn; and $21,000 by William J. Shiek, who was the original promoter of the scheme. The remaining $15,000 in stock has never been sold, but is held by Schwartz in trust for the company. In 1885 Shiek was manager of the company and the defendant, Miller, was acting as his clerk. In the following year a new board of directors was elected and Miller was made director, secretary, and general manager of the company. In May, 1887, there was outstanding against the company, in addition to a certain indebtedness of $15,000, and accrued interest secured by a trust deed on the property, a further indebtedness of $5,000 secured by a second trust on property, Alfred C. Phelps being the trustee named in the latter trust

deed. In 1887 the company's property was sold under the second trust deed to one P. A. Keener. Keener soon thereafter transferred the property to the defendant Miller, who, also, secured a release of the first trust deed from Phelps, the trustee named therein.

About this time Miller organized a new company and added the word "Manufacturing" to the name of the old company, calling the new company, "The Denver Fire Brick Manufacturing Co." Thereupon Miller conveyed the property to the new company, in which he was the principal stockholder. This company elected a board of directors, of which board Miller was made president. He was, also, made general manager for the company. It is claimed by appellee that the purchase by Miller was fraudulent and in violation of his trust as a director of the old company. The claim being that while secretary and sole manager of the Denver Fire Brick Company he fraudulently caused the property to be sold under a trust deed, and procured its purchase by Keener, acting in his interest at an inadequate price; and it is also claimed that the defendant Miller negotiated a loan on this property in his own name, while the property was being advertised for sale under the trust deed and before such sale had actually taken place, and that from the proceeds of this loan he paid the price bid at such sale.

The action is brought by the plaintiff Murray, as a stockholder of the old company, to set aside the sale to Miller and the new company. Schwartz was president of the old company and Lynn vice president, and both are charged with conspiring with Miller. The defendants with Miller are the late company, its board of directors, elected in 1886, the new company; and its board of directors and the mortgagees, Crippen, Lawrence & Co. To the complaint a demurrer was filed and overruled, and to this ruling of the trial court the first assignment of error is directed. Four grounds are stated in the demurrer. The first and second, however, may be considered as one, and are in effect that the plaintiff, a mere stockholder, can in no event maintain an action of

this nature. Third, that the complaint shows on its face that the plaintiff has been guilty of *laches* in the bringing of the suit. Fourth, that the complaint does not state facts sufficient to constitute a cause of action.

After the overruling of the demurrer, answers were filed by the defendants. In these answers several special defenses are pleaded and they, also, contain denials of all except the mere formal allegations of the complaint. The special defenses need not be further noticed. The cause was tried to a court without a jury. This trial resulted in a decree in substance as follows: First,—The claims secured by trust deeds are declared valid liens upon the property of the defendant company. Second,—The defendants Miller and The Denver Fire Brick Manufacturing Company are declared trustees for the use and benefit of said The Denver Fire Brick Company as to all of the property which The Denver Fire Brick Company owned on May 30, 1887, and which has in any manner come to the hands or into the possession of the said Miller and the said defendant The Denver Fire Brick Manufacturing Co., or either of them, together with all the rents, issues and profits thereof, subject to said two deeds of trust mentioned in the preceding paragraph. Third,—Stephen H. Standart is appointed receiver of all of the property mentioned and referred to in the foregoing paragraphs, with the usual powers to take possession of all the said property, and to care for, hold, operate and dispose of the same for the use and benefit of said The Denver Fire Brick Co., under the order of this court, upon his filing herein his bond, etc.

The remaining facts sufficiently appear in the opinion.

Mr. JOHN H. CROXTON, Messrs. LIPSCOMB & HODGES and Messrs. RIDDELL, STARKWEATHER & DIXON, for appellants.

Mr. OSCAR REUTER and Mr. FRANCIS A. RIDDLE, for appellee.

MR. CHIEF JUSTICE HAYT delivered the opinion of the court.

It is doubtful if the allegations of the complaint are sufficient to give the plaintiff, a stockholder, a sufficient status to maintain this action. It is clear that the proof does not.

The interests of a stockholder are dependent and indirect, the title to its property, both real and personal, is in the corporate entity. The courts will not, as a general rule, at the suit of a stockholder, interfere with the internal management of a corporation. To maintain such a suit the stockholder must be able to show that otherwise there will be a failure of justice. This has been decided in one form or another, time and time again, by both the English and American courts.

Among the English cases *Foss v. Harbottle*, 2 Hare, 461, and *McDugal v. Gardiner*, 1 Ch. D. 13, have long been regarded as the leading. In the former of these cases the bill was filed by two shareholders of the company, who sued on their own account and for all other owners of shares, except the defendants. The five directors of the company; one shareholder, who was not a director; and the solicitor and architect of the company were named as defendants in the bill and were charged with planning and effectuating various fraudulent and illegal transactions, whereby the property of the company was misapplied and wasted. It was, also, alleged that several of the directors had become disqualified from acting as directors by reason of bankruptcy, and that consequently there had ceased to be a sufficient number of qualified directors to constitute a board. That the company had no clerk or office and that under such circumstances the shareholders had no power to take the property out of the hands of the defendants, to pay the liabilities or to wind up the affairs of the company. The prayer of the bill being that the defendants might be decreed to make good the shortage to the company and the loss and expense occasioned by the acts complained of. The appointment of a

receiver to wind up the affairs of the company was, also, prayed.

The possibility of convening a general meeting of the shareholders for the purpose of considering the acts of the board of directors, was not, however, excluded by the allegations of the bill; and it was held that in the absence of such an averment plaintiffs could not maintain the action, assuming as it did the practical dissolution of the corporation; as under the circumstances there was nothing to prevent the company in its corporate capacity from obtaining the redress asked by the plaintiff. The case appears to have been very carefully considered and the opinion is an able and exhaustive one, and, so far as we are aware, has never been questioned by the courts.

The case of *McDugal v. Gardiner, supra,* is twice reported in the 15th vol. of the English Reports, Moak's Notes, the opinion of the vice-chancellor being found upon p. 388, and the opinion upon appeal commencing at p. 624. In this case the articles of association of the company empowered the chairman at any general meeting of shareholders to adjourn the meeting with the consent of those present. It was further provided upon the question of adjournment a poll of those present should be taken, if demanded by five shareholders. The bill was filed by a shareholder, who alleges that, at a general meeting of the company, a motion to adjourn was made and the vote put and declared carried by one of the directors acting as chairman. A poll was thereupon duly demanded, but the chairman ruled that a poll could not be had on the question of adjournment and thereupon immediately left the chair. The plaintiff, and those siding with him, then passed a resolution, among others, removing one of the directors.

The bill further charged that the directors, or some of them, had combined to take this course with the view of stifling discussion. A demurrer having been filed to this bill it was overruled by the vice-chancellor. Upon appeal the decision was reversed, the court holding under the rule

as laid down in *Foss v. Harbottle* and other cases, that for the reason that the wrong complained of was a wrong to the company rather than to him, the shareholder was not entitled to maintain the bill. This case appears to have been fully considered, the three judges sitting, each writing separate opinions.

The question has, also, been repeatedly considered by the American courts, the leading case in this country being *Hawes v. Oakland*, 104 U. S. 450. The opinion of the court was delivered by Mr. Justice Miller. The learned justice considers at length the English and American cases. The opinion is such a clear and able exposition of the law upon the subject that it has since been cited with approval in many cases.

The appeal was brought by a shareholder in the Contra Costa Water Works Co., the company and its directors. The City of Oakland being made defendants, it is alleged that the company was furnishing the city with water beyond what the law required it to do, without charge, and that the directors of the company, contrary to plaintiff's request, continued to do so to his great injury and to the great injury of all other shareholders of the company. The court, while admitting the difficulty of formulating general rules which would be applicable to all cases, nevertheless carefully outlined the principles which should govern this class of cases. Among other requisites of a bill of this nature, in addition to the grievances which would warrant this kind of relief to the company, it was held that before the shareholder could be allowed to conduct a litigation he should satisfactorily show that he had exhausted all the means within his reach to obtain, within the corporation itself, redress of his grievances. In addition to making an earnest effort to induce the managing body of the corporation to seek relief, he must further show, if he fails with the directors, that he has made an honest effort to obtain relief through the stockholders as a body, if time permits or has permitted him to do so. And

if this be not done he must show cause why it could not be done or that it would be unreasonable to require it.

As a result of the consideration given to the question in this case, by the highest tribunal in this country, rule 94 was adopted for the guidance of suitors in the national courts as well as the courts themselves in the future. This rule sets forth, with much circumspection, allegations that have since been required in every bill brought by a stockholder against the corporation, or other parties, where the cause of action is founded on rights which may be properly asserted by the corporation. This rule, without doubt, requires certain allegations to be stated that would be deemed unnecessary outside of the federal courts.

It is worthy of note in passing that the subsequent decisions of the United States court upon this question are of little value in the state courts, for the reason that all such decisions must necessarily have been founded upon this rule, although, in some of the cases, mention of the rule is not to be found in the opinion. Tested by the foregoing decisions, which may be fairly said to embody the spirit of the English and American law upon the subject, the present action cannot be maintained. The bill was not filed until nearly two years after the consummation of the alleged fraudulent conduct complained of and nearly nine months after the knowledge of such conduct had come to the plaintiff, according to the allegations of this complaint.

An examination of the complaint discloses that plaintiff bases his right to sue in place of the company upon:

*First*—The refusal of the company to institute suit after the plaintiff had requested the president to bring such suit.

*Second*—Upon the allegations that a majority of the board of directors were implicated with Miller in the transaction complained of, and that some were non-residents of the state of Colorado and could not be reached.

*Third*—Lack of financial ability on the part of the company to pay the expenses of the suit.

*Fourth*—An allegation that Miller would dispose of his

property before suit could be brought by the company, should steps be taken for the purpose of having such suit instituted.

*Fifth*—A statement that of the capital stock of said company Schwartz is the owner of 250 shares, Lynn 50 shares and Shiek 210 shares. That neither Schwartz nor Lynn will co-operate with plaintiff in the present suit and that Shiek had hypothecated and disposed of stock to parties unknown to plaintiff.

In the federal courts a demand upon the managing board of the corporation, before a suit can be maintained by a stockholder, is made necessary by rule 94. In the state courts, however, such a demand may be dispensed with under certain circumstances, as where the corporate management is under the control of the guilty parties, and it will be conceded that the allegations of the present complaint are sufficient in this respect. 3 Pomeroy Eq. § 1095 and note 1; Cook on Stock & Stockholders, 1st ed., § 695.

But what is shown or alleged with reference to the stockholders? The fifth statement was undoubtedly made for the purpose of showing that the majority of the shares of the capital stock of the company was held by those who would not join the plaintiff in his efforts to obtain relief from the old company. The averments in this regard fall short, however, of showing that a majority of the stock is held adversely to plaintiff's interest. This will be seen when we remember that plaintiff himself owes 330 shares, which, with the stock owned by Shiek, constitutes a clear majority of the capital stock of the company.

Now, as Shiek is shown to be friendly to plaintiff in the present contention, unless it be disclosed that Shiek has made such disposition of his stock that he cannot vote upon it, the bill fails to show that plaintiff cannot obtain full redress through the corporate entity, known as The Denver Fire Brick Company, hence, the necessity for him to sue as a stockholder never existed. The bill does not allege that Shiek would not co-operate with plaintiff as against the old

board of directors, and if we go to the proof we find the contrary to be affirmatively established.

Neither the amount of stock hypothecated by Shiek, nor the amount sold by him, is stated. In another paragraph it is alleged in the alternative simply, viz.: That Shiek had either hypothecated or sold his stock. The proof shows that he had simply pledged it. As the owner and pledgor of this stock, Shiek was entitled, under our statute, to represent and vote upon the stock at all meetings of the stockholders. 1 Mills Ann. St. § 496. Thus it is clearly shown that the owners of a majority of the stock were willing to co-operate with plaintiff at all times. Moreover, it is in evidence that certain other stock was in the possession and under the control of one of plaintiff's attorneys, and that at, at least, one meeting of the stockholders this stock had been voted by such attorney. It is thus conclusively established that the control of the majority of the capital stock of the company was in the plaintiff and those willing to co-operate with him in this suit. By the allegations of the bill nearly two years had elapsed since the consummation of the alleged fraudulent transaction complained of, and nine months from the time upon which plaintiff admits that he had knowledge of such fraud, before the institution of this suit. By the statute of Colorado the directors of joint stock companies are elected annually. In this case the time for holding one and probably two such annual meetings, to say nothing of adjourned and special meetings, was allowed to pass without the plaintiff putting forth any effort to obtain redress by a change in the directory. During this time the property, for which a receiver was appointed by the court below, was being developed and made more valuable by the new company. And, doubtless, new and innocent shareholders had become interested in its stock. Under these circumstances, and in view of the authorities, we think that plaintiff should be required to allege and prove that he had either made an honest effort to obtain redress at a meeting of the shareholders or should have alleged a valid excuse for not making such an effort.

The allegation with reference to the transfer of the individual property of Miller is entirely insufficient as an excuse, nothing in this regard being alleged against the corporation.

The vast and increasing importance of the business transacted by corporations and the immense number of stockholders in many of these companies, require that the courts should closely scrutinize actions brought by stockholders where the cause of action is primarily one belonging to the company. If it be once conceded that such companies may be embarrassed and subjected to cost and expense by every stockholder who thinks he has a grievance, the usefulness of corporations would be seriously crippled. Corporations can act only through agents and officers appointed for that purpose in pursuance of the statute. Every stockholder knows this when he purchases his stock, and it is not unreasonable to require him to seek redress for his grievances through the company, or to show some reason why he does not do so. In the absence of such a showing he ought not to be allowed to maintain an action as a stockholder, where the right of action properly belongs to the company.

No doubt, corporate officers frequently abuse the power lodged in their hands by the corporation, and manage the corporate business in the interests of cliques and stockjobbers rather than in the interest of the company and its stockholders. And courts of equity have always been open to afford redress to even a minority of the stockholders where their rights have been or are threatened with injury. But this is only where redress cannot be had through the corporation—it is to prevent a failure of justice. In this case the complaining stockholder, with a ready means at hand of correcting through the corporation the alleged abuses of which he complains, has for a long time failed to avail himself of such means; until he does so he must be denied the right to maintain an action for such purpose, as a stockholder. *Foss v. Harbottle, supra; McDugal v. Gardiner, supra; Hawes v. Oakland, supra; Rathbone v. Gas Co.*, 31 W. Va. 798; *Boyd v. Simms*, 87 Tenn. 771.

As plaintiff has not shown a right to maintain the action, the judgment of the district court must be reversed and the cause remanded.