# April Term, 1903.

[No. 2251.]

IDE ET AL. v. BASCOMB ET AL.

**Corporations—Action by Stockholders—Pleading.**

An action cannot be maintained by stockholders of a corporation upon a cause of action which was a direct wrong to the corporation itself, unless it affirmatively appears that plaintiffs have made proper effort to induce the directors of the corporation to bring suit in the name of the corporation and that the directors have failed or refused to do so, and also that plaintiffs have exhausted all means within their reach to obtain redress through the stockholders of the corporation, or unless a state of facts be shown which makes it apparent that such effort to induce action by the directors or to obtain relief through the stockholders would be futile.

*Appeal from the District Court of Lake County.*

Mr. J. E. HAVENS, for appellants.

Mr. JOHN D. FLEMING and Mr. DAVID B. GRAHAM, for appellees.

GUNTER, J.

The Incas Mining Company, a corporation, was organized May 14, 1881, with a capital stock of two million dollars, divided into two hundred thousand shares. Jed H. Bascomb, Wm. Hardin, Mrs. William W. Morrison, James O'Brien, Edward H. Trerice, and John Walsh, owners of the White Prince mining claim, deeded the same to the corporation, and received in return eighty thousand shares of its capital stock. W. S. Ide and his then associates, owners of the Across the Ocean mining claim, deeded to the new company their claim, receiving eighty thousand

(415)

shares of its capital stock in return. The remainder of the capital stock—forty thousand shares—was left in the hands of the treasurer as treasury stock. September 27, 1881, W. W. Morrison purchased two hundred and forty shares of the treasury stock. It does not appear what amount, if any, of the remainder of the treasury stock was sold. The only information conveyed by the complaint is by the following extract therefrom:

"Complainants further allege, that of the forty thousand shares of capital stock (the treasury stock) they have no information as to how much of the same was sold, but allege on information and belief, that enough of the same was sold to have paid off any and all indebtedness, that may have at any time been incurred by the defendant company, and that at the time of the institution of the suit by defendant, William S. Ide, more fully hereinafter referred to, there was treasury stock in the hands of the proper officers of said company, which could and should have been used for the payment of any legal or equitable indebtedness against said company."

The indebtedness of the company is not averred, and there are no facts given from which it can be even conjectured what amount, if any, of this treasury stock, other than the two hundred and forty shares above mentioned was sold.

William S. Ide, J. W. Graham, George W. Allen, Thomas B. McCormack, Walter B. Brooks, John K. Sullivan and Richard T. Clarke were designated in the articles of incorporation as directors, and were still such—according to the averments of the complaint—at the time of the institution of the present suit. September 27, 1890, five persons, W. S. Ide, R. T. Clarke, C. E. Markeson, D. L. Brownersmith, and J. W. Bradshaw, assuming to act as a board of directors of the Incas Mining Company, sitting at

Columbus, Ohio, fraudulently—as it is alleged—authorized the issuance of the following note to W. S. Ide:

"$1,500.00          Columbus, Ohio, Sept. 27, 1890.

"Thirty days after date, we promise to pay to the order of W. S. Ide, Fifteen Hundred Dollars at the Fourth National Bank of this city, with interest at the rate of eight per cent. per annum, value received.

"The Incas Mining Company,

"By C. E. Markeson, its

"President."

Default having been made in the payment of the note, suit was instituted thereon by the payee, W. S. Ide, in the district court of Lake county, Colorado, December 12, 1890. Three days thereafter service of the summons was gotten upon one of the stockholders of The Incas Mining Company, John Walsh, and judgment recovered for the principal and interest of the note September 4, 1891. September 15, 1891, certain real estate of the judgment debtor—The Incas Mining Company—was levied on to satisfy the judgment, and sold October 10, 1891, to W. S. Ide; a sheriff's certificate of purchase issued, and on August 16, 1892, a sheriff's deed was made to W. S. Ide.

No one of appellees prior to October 1, 1894, knew of the passing of the resolution purporting to authorize the execution of the note, or of the institution of the suit, or of the recovery of the judgment, or of any one of the steps culminating in the issuance of the sheriff's deed to W. S. Ide.

February 28, 1895, the present action was instituted against W. S. Ide and The Incas Mining Company to set aside the judgment, the certificate of sale, and the sheriff's deed. By agreement of the parties, upon facts immaterial to this ruling, W. H. Ide was substituted for W. S. Ide, one of the original defendants.

The plaintiffs below (appellees) were four stock-holders who sued for themselves and all others sim-ilarly situated.   The case was tried February 5, 1900. Plaintiffs had a decree.   Defendants appeal and urge as one of the grounds for reversal, that the action should have been brought by the corporation, and not by its stockholders.

It affirmatively appears from the complaint that the wrongs complained of, the fraudulent note, its merger into judgment, and the sale and conveyance of defendant corporation's lands to defendant W. S. Ide, were direct wrongs to the corporation; that the directorate of the corporation consisted at the time of the institution of the present action of seven mem-bers, and has so consisted since the organization of the company in 1881; that only two of them—Ide and Clarke—were in any wise connected with the alleged wrong.   No request was made of this directorate, or any of its members, nor was any effort made through the directors to have an action instituted in the name of the corporation to redress the alleged wrongs.   The only explanation offered why this was not done is the following allegation of the complaint:

"And your complainants further represent and allege, that of the seven directors, first selected to manage the affairs of said company for the first year, none of the same were owners of the White Prince mine aforesaid, but were entirely selected from the owners of Across the Ocean lode mining claim, or be-cause of their friendship to and for said Ide.   And that two of the same, viz.: Defendant Ide and Rich-ard T. Clarke, are of the board of directors, who have been assuming to act in Columbus, Ohio, as the direc-tors of said company, and that a majority of said board, provided for in the articles of incorporation, complainants fear, might if notice were given them, co-operate with said Ide, and those who have been

assuming to act, and that it would be impracticable and dangerous to complainants' rights, as well as unavailing, for complainants to ask the parties, who have been assuming to act as and for said company, to join with complainants in this suit.''

The reasons as we understand this paragraph assigned for not making application to the board are, that its members were selected in 1881, from the owners of the Across the Ocean lode mining claim, or because of their friendship for said Ide. No fact is stated why having been owners of the lode mentioned would cause them to violate their duty as directors, and countenance the alleged fraud against the corporation of which they are trustees. Nor is any fact alleged from which we are justified in concluding that their friendship for Ide in 1881, would prevent them from doing their duty as directors in 1895.

It is further alleged in the above paragraph that appellees feared if notice were given of the intended suit, it would be dangerous to their rights. The mere fact that appellees entertained this fear does not justify us in concluding that grounds existed for it. The facts upon which such fear is grounded are not alleged. There are no allegations in the complaint of an application to the stockholders of appellants to take steps to right the alleged wrong. There are no allegations explaining why an application was not made to the stockholders. The capital stock of the company consisted of two hundred thousand shares. Eighty thousand shares were issued, as above stated, to the owners of the White Prince mining claim. Eighty thousand shares issued to ''Wm. S. Ide, and his former associates in the Across the Ocean lode mining claim.'' We have no definite information as to the disposition made of the forty thousand shares left as treasury stock, except as to the 240 shares sold to William M. Morrison, one of appellees. It

thus appears that eighty thousand shares of the issued stock were at the time of the institution of this suit in the hands of the former owners of the White Prince mining claim; 240 shares owned by William M. Morrison, one of appellees. As it does not appear that more than eighty thousand other shares had been issued, we assume for the purpose of this ruling, that only one hundred and sixty thousand, two hundred and forty (160,240) shares of stock of the company were outstanding at the time of the institution of this suit. These last mentioned eighty thousand shares were issued in 1881, to appellant Ide, and his then friends. What were the relations between Ide and these friends at the time of the institution of this suit we are not advised. Where and in what amounts this stock was held at such time the complaint does not allege. It is not alleged in the complaint that some of these last mentioned stockholders would not have co-operated with appellants to right the frauds alleged in the complaint, nor are facts alleged from which it appears that they would not have done so. To sum up, no request was made of the directors to take this proceeding. No excuse is offered for the failure of appellees to do so. No request was made of the stockholders to hold a meeting and remove the directorate, or take steps for a righting of the alleged wrong, nor is any explanation offered in the complaint for not having requested the stockholders to act. So far as we are advised by the complaint, all of the stockholders except Clarke and Ide, might have co-operated in efforts to redress the wrongs complained of. The complaint does not inform us the number of shares of stock held by Clarke and Ide. Knowledge of the wrong was had October 1, 1894; this suit was not instituted until practically five months thereafter, and yet during this interval there does not appear to have been any effort made to induce corporate action, and

so far as the complaint advises us, longer time might have been taken if necessary to obtain corporate action to redress the wrongs, without prejudice to the rights of the corporation.

"Where the complaining shareholders do not sue to redress grievances peculiar to themselves, but proceed *in right of the corporation,* or, what is the same thing, *in right of all shareholders,* then the failure or refusal of the corporation itself to demand redress is a condition precedent to the right of the shareholders to sue or to appear as plaintiffs, unless a state of facts is alleged and proved which makes it apparent that such a demand would be futile."— Commentaries on the Law of Corporations, Thompson, vol. 4, § 4500.

In *Foss v. Harbottle,* 2 Hare 461, the bill was by two shareholders of the company suing for themselves and all other shareholders except the defendants. The defendants were five directors, one shareholder—not a director—and the solicitor and architect of the company. The charge was the fraudulent misapplication of assets of the company. The prayer of the bill was that defendants might be decreed to make good the shortage to the company arising from the act complained of. The appointment of a receiver to wind up the affairs of the company was also prayed. In ruling, the court *inter alia,* said:

"The possibility of convening a general meeting of the shareholders for the purpose of considering the acts of the board of directors, was not, however, excluded by the allegations of the bill; and it was held that in the absence of such an averment plaintiffs could not maintain the action  *  .*  *  as under the circumstances there was nothing to prevent the company in its corporate capacity from obtaining the redress asked by the plaintiff."—Approved *Miller v. Murray,* 17 Colo. 408, 30 Pac. 46.

In *Miller v. Murray*, plaintiff owned three hundred and thirty shares of capital stock of The Denver Fire Brick Company, organized under the laws of Colorado by plaintiff Murray, and defendants Schwartz and Lynn, and one Sheik. The par value of the capital stock of the company was fixed at one hundred thousand dollars, of which thirty-three thousand was paid in by the plaintiff Murray, his wife and daughter. Thirty-one thousand by defendants Schwartz and Lynn, and twenty-one thousand by Sheik. The remaining fifteen thousand in stock was held in trust for the company and never sold. Sheik was manager of the company, and defendant Miller acting clerk. In 1886 a board of directors was elected and Miller was made director, secretary and general manager of the company. In May, 1887, there was outstanding against the company, in addition to an indebtedness of fifteen thousand dollars, and accrued interest secured by a trust deed on the property, a further indebtedness of five thousand dollars secured by a second trust on the property. In 1887 the company's property was sold under the second trust deed to one Keener, who soon thereafter transferred the same to defendant Miller, who secured a release of the first trust deed. Miller organized a new company adding the word "manufacturing" to the name of the old company, calling the new company "The Denver Fire Brick Manufacturing Company." Thereupon Miller conveyed the property to the new company which elected a board of directors, and Miller was made president. The action was by Murray as stockholder of the old company, to set aside the sale to Miller and the new company, upon the ground that the purchase by Miller was fraudulent, and in violation of his trust as a director of the old company. Schwartz, president of the company, and Lynn, vice-president, were both charged with conspiring with

Miller.   The defendants were Miller,. the late com-
pany, its board of directors elected in 1886, the new
company, and its board of directors, and the mortga-
gees, Crippen, Lawrence & Company.   The plaintiff
had a decree which on appeal was reversed, the court .
holding that a majority of the stock of the old com-
pany was held by plaintiff, and those acting with
him; that they could have held a meeting of the stock-
holders, removed the old directors, and have elected a
directorate that would have ordered the suit in the
name of the corporation, and that, therefore, it was
not necessary to institute the suit in the names of the
stockholders.   In the course of the opinion it is said:

"Among other requisites of a bill of this nature,
in addition to the grievances which would warrant
this kind of relief to the company, it was held that
before the shareholder could be allowed to conduct a
litigation he should satisfactorily show that he had
exhausted all the means within his reach to obtain,
within the corporation itself, redress of his griev-
ances.   In addition to making an earnest effort to in-
duce the managing body of the corporation to seek
relief, he must further show, if he fails with the di-
rectors, that he has made an honest effort to obtain
relief through the stockholders as a body, if time per-
mits or has permitted him to do so.   And if this be
not done he must show cause why it could not be
done or that it would be unreasonable to require it."

As stated in a number of the authorities, "to
maintain such a suit the stockholder must be able to
show that otherwise there will be a failure of justice."
—*Miller v. Murray, supra.*

In *Morgan v. King,* 27 Colo. 539, 551, it is said:
"The usual rule is, that an action cannot be main-
tained by stockholders on behalf of the corporation
unless it appears that the party bringing the action

has exhausted the means of putting the corporation in motion."

In *Hawes v. Oakland*, 104 U. S. 450, the action was by a shareholder in the Contra Costa Water Works Company, in behalf of himself and other shareholders, against the city of Oakland, The Contra Costa Water-Works Company, and its board of directors, to right a wrong to the corporation in furnishing to the city of Oakland an excessive amount of water, to the prejudice of plaintiffs and other stockholders. Relief was denied because it did not appear affirmatively that proper effort had been made by the shareholders to induce corporate action. In the course of the opinion the court said:

"The efforts to induce such action as complainant desires on the part of the directors, and of the shareholders when that is necessary, and the cause of failure in these efforts should be stated with particularity  *  *  *  ."

The reason of the rule requiring an earnest and reasonable effort to induce corporate action to be pleaded and proven before the stockholder can maintain an action to right a direct wrong to the corporation is thus stated in *Miller v. Murray, supra:*

"The vast and increasing importance of the business transacted by corporations and the immense number of stockholders in many of these companies, require that courts should closely scrutinize actions brought by stockholders where the cause of action is primarily one belonging to the company. If it be once conceded that such companies may be embarrassed and subjected to cost and expense by every stockholder who thinks he has a grievance, the usefulness of corporations would be seriously crippled. Corporations can act only through agents and officers appointed for that purpose in pursuance of the statute. Every stockholder knows this when he pur-

chases his stock, and it is not unreasonable to require him to seek redress for his grievances through the company, or to show some reason why he does not do so. In the absence of such a showing he ought not to be allowed to maintain an action as a stockholder, where the right of action properly belongs to the company."

In Commentaries on the Law of Corporations, vol. 4, Thompson, § 4500, it is said:

"The reason is that if every shareholder were allowed to bring such suits at pleasure the directors might find themselves harassed by a multiplicity of suits, and by endless litigation. The principle is, that the stockholder or stockholders seeking to maintain the action must show that they have used in good faith reasonable efforts to obtain redress at the hands of the corporation."

When the principles of law so announced are applied to the facts appearing from the complaint herein, it fails to state a cause of action. It does not there affirmatively appear that appellees used reasonable efforts to obtain redress at the hands of the corporation before instituting this action.

We have not considered the other grounds urged for a reversal, and intimate no opinion as to them.

Judgment reversed with instructions to the lower court to permit plaintiffs to amend their complaint as they may be advised.    *Reversed.*

Maxwell, J., not sitting.