JENKINS et al. v. HAMMERSCHLAG et al.

(Supreme Court, Appellate Division, First Department. March 10, 1899.)

1. ASSIGNMENTS FOR CREDITORS—TRUSTEES—RESIGNATION.
    A trustee of shares of stock for the benefit of certain creditors of the grantor, where appointed by such creditors under an agreement with the grantor, can resign only by an order of court, or by the unanimous consent of the creditors.

2. SAME—RIGHT TO PURCHASE TRUST PROPERTY.
    A trustee of shares of stock for the benefit of creditors of the grantor, with power to sell the stock, cannot become a purchaser at such sale.

3. SAME—LACHES.
    The defense of laches cannot be urged by unfaithful or dishonest trustees, except in extreme cases.

Appeal from special term, New York county.

Action by Robert E. Jenkins (as assignee) and another, suing on their own behalf and on behalf of all other creditors of Joseph Kuntz, similarly situated, who may contribute to the costs and expenses of the action, against Moritz Hammerschlag and others, to set aside a sale of shares of stock, and to require defendants to account for

the administration of the trust in favor of plaintiffs. From a judgment for plaintiffs, defendants appeal. Modified.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, McLAUGHLIN, and INGRAHAM, JJ.

Edward J. McGuire, for appellants.
Samuel Untermyer, for respondents.

McLAUGHLIN, J. In February, 1890, Joseph Kuntz caused to be organized under the laws of the state of New York, with a capital of $400,000, divided into shares of $100 each, the Joseph Kuntz Brewing Company; and he then, although insolvent at the time, transferred to it, in consideration of 3,500 of such shares, his property, which consisted of a brewery and certain personal property used in connection with it. After he had made the transfer, and received in exchange the stock, he called a meeting of his unsecured creditors, and made to them a proposition with reference to their extending the time of payment of their respective claims. His proposition was the acceptance by each creditor of two promissory notes made by him,—one for one-half of the indebtedness, payable in one year, with interest, and the other for the remaining one-half, payable in two years, with interest. He also proposed, if his propositions were accepted, to deposit, as collateral security for the payment of the notes, with certain trustees, to be selected by the creditors, 2,250 shares of the stock received by him from the corporation mentioned. The proposition was acceptable to the creditors present, and thereupon two agreements were prepared, both bearing date March 11, 1890,—one between Kuntz and his creditors, which provided that the creditors should surrender their claims against him upon his delivering the notes and stock as he had proposed, and that the agreement should not be binding, unless four-fifths of all the creditors in amount assented thereto. The other agreement was between Kuntz and the five persons selected by the creditors to hold the stock, and provided that Kuntz should turn over to such persons 2,250 shares of stock, which were to be held by them, as collateral security for the payment of the notes, until all the creditors who might join in the agreement had been fully paid, or their claims settled. This further agreement provided that, if such payments were not made within two years from that date, then the trustees should sell the stock at auction, and divide the proceeds among the creditors pro rata, according to their respective claims, and that in the meantime the trustees holding the stock had the right to vote upon it, subject to certain restrictions as to mortgaging the property of the corporation and increasing the salaries of its officers, and that they also had the right to elect two members of the board of directors. The agreement with the creditors became operative by the necessary four-fifths agreeing to the terms and conditions of it, and thereupon Kuntz gave the notes proposed to his creditors, and turned over to the trustees named, who are the defendants in this action, the 2,250 shares of stock; and the trustees selected two of their number to act as, and they were elected, directors of the corporation. A few weeks

after these agreements were executed, Kuntz died; and the trustees
selected by the creditors to hold the stock referred to thereupon as-
sumed to, and thereafter did, manage and control the business of
the corporation, until March, 1892. From the testimony given upon
the trial, it is clear that, almost immediately following Kuntz's
death, the defendants Hammerschlag, Schnugg, and Shalek, a ma-
jority of the trustees, conceived the idea of acquiring for themselves
the stock which they held, at the lowest possible cost; and to that
end they purchased, at about 25 cents on a dollar, a majority of the
claims of the creditors who had joined in the agreement above re-
ferred to. Having acquired a majority of these claims, at the ex-
piration of the two years provided in the agreement with the trus-
tees (the notes given by Kuntz not having been paid in full) they
called a meeting of the creditors, of which they themselves were
then a majority, and notified them that the stock would be sold at
public auction, and the proceeds divided in accordance with the
agreement under which the same was held. Prior to such meeting
they had been advised by counsel that they could not, while acting
as trustees, legally acquire by purchase at the sale any of the stock;
and to obviate this difficulty it was arranged that one of them
(Schnugg) should resign as trustee at the meeting of creditors, which
he did. The stock was shortly thereafter advertised for sale in an
inconspicuous way, and on the day of sale purchased by Schnugg,
for the benefit of himself, Hammerschlag, and Shalek, for 10 cents
on a dollar, which was much below its market or true value. It
was also made to appear on the trial that care was taken by Ham-
merschlag, Schnugg, and Shalek to prevent, prior to the sale, pros-
pective purchasers from acquiring any information as to the real
value of the stock to be sold. The proceeds of the sale of the stock
were insufficient to pay the claims of creditors, and thereupon this
plaintiff, on behalf of himself and all other creditors, similarly sit-
uated, who might see fit to come in, instituted this action for the
purpose of procuring a judgment declaring the sale of the stock to
be null and void, and requiring the defendants, as trustees under the
agreement with Kuntz, to account for the administration of the
trust. The plaintiffs had a judgment, from which the defendants
have appealed.

The sale of the stock and the purchase of the same by Schnugg
were void. Schnugg was at the time a trustee, and held the stock
as such. His attempted resignation amounted to nothing, so far as
discharging him as a trustee, or relieving him from the liability im-
posed on him by the agreement. The only way in which he could
legally resign and cease to be a trustee, or terminate his liability as
such, was by an order of the court, or by the unanimous consent of
all the creditors, or other persons interested in the faithful execu-
tion of the trust. Cruger v. Halliday, 11 Paige, 314. Being a trus-
tee at the time of the sale, he had a duty to perform in regard to the
stock which was inconsistent with his assuming the character of a
purchaser. As a trustee, it was his duty to sell the stock for as
much as possible. As a purchaser, he would naturally desire to
purchase at the lowest price possible. He thus took a position in

which his personal interest was brought sharply in conflict with his duty as a trustee, and which the court under no circumstances will permit a person discharging a trust to take. It would indeed be a sad commentary upon the exercise of the equitable power of the court, if the acts of these trustees should be approved, or the sale be permitted to stand. But it is said that the plaintiff was guilty of laches in instituting the action, and therefore the complaint should have been dismissed. We do not think so. It is only in extreme and exceptional cases that the defense of laches can be used as a shield to protect unfaithful or dishonest trustees. It cannot be so used in this case.

The conclusion reached by the trial court was in the main correct. We are, however, of the opinion that the power conferred upon the receiver to vote upon the stock directed to be delivered to him, as well as the power given to him to manage the business and affairs of the corporation, is too broad, and that he ought not to be permitted to sell the stock until after the defendants have accounted, or a further order of the court has been made. We are also of the opinion that the defendants ought not to be removed as trustees, under the agreement of March 11, 1890, until after they have rendered a full account of their acts and doings thereunder. The payment directed to be made by, and the subsequent discharge of, the receiver, are also improper. The directions in this respect can only properly be given after the accounting has been had, when the court will have before it all the facts as to the value of the trust property, and the acts and doings of the trustees under the trust agreement. The judgment, therefore, should be modified as follows: First. By decreeing that the defendants did not cease to be trustees under the agreement of March 11, 1890, by reason of the sale and pretended purchase by Schnugg of the stock in 1892, but that they, as such trustees, still hold such stock, under that agreement, for the benefit of the creditors, with the duties imposed upon them by that agreement, precisely to the same extent and in the same way as though such pretended sale had not been made. Second. By decreeing that the trustees under the agreement of March 11, 1890, account before the referee named in the judgment for all profits, income, and dividends which may have been received by them from the stock placed in their hands from the date of the agreement down to the time of the accounting. Third. By decreeing that the referee give notice of the time and place of the accounting to all creditors of Joseph Kuntz, deceased, who were parties to the creditors' agreement of March 11, 1890, whose residence can be ascertained, and by publication, as directed by the court, to those whose residence cannot be ascertained, who have not already been paid in full, and that they may, if they so desire, come in and prove their claims in this action, and to report to the court the amount due to each of such creditors who may come in and press his claim. Fourth. By decreeing that the stock delivered to the committee by Kuntz, so far as it is held by the defendants, or any of them, be turned over to the receiver named in the judgment, the same to be held by him to await the final order of the court, and that, while he so holds the same, to so vote upon it,

and to take such action in regard to the management of the affairs of the corporation, as he may from time to time be directed by the court, upon notice to the parties to this action. Fifth. So far as any of such stock may have been disposed of by said defendants since their unlawful purchase thereof, and not now be held by them, by decreeing that said defendants account for the value of said stock so disposed of, and pay over to said receiver such value in money; the said defendants, however, upon the accounting, to be allowed whatever sums they may have actually paid to the creditors out of the proceeds of the sale of the stock herein held to be unlawful. All questions of costs and allowances in the court below, and of the ultimate disposition of the fund, to be reserved until final judgment.

As thus modified, the judgment should be affirmed, with costs of appeal to the respondents. Upon the settlement of the order to be entered hereon, either of the parties may submit in writing such suggestions as to the form of the order as they may be advised. All concur.