[No. 3947.]
MORGAN, ADMINISTRATOR, ET AL. v. KING.

1. PRACTICE—PLEADING—ACTION BASED UPON FRAUD—LIMITATION —LACHES.

A complaint by a stockholder of a bank to set aside a fraudulent transfer of mining stock by the bank to certain of its directors, more than three but less than five years after the transfer was made, which alleges that plaintiff had no notice or knowledge of the facts on which he based his action until within six months of the time he began his suit, is good as against the objections of limitation or laches under either section 2911, Mills' Ann. Stats., which provides that actions based upon fraud shall be commenced within three years after the discovery by the aggrieved party of the facts

constituting such fraud, or section 2912, which provides that bills of relief, in case of the existence of a trust not cognizable by the courts of common law, and in all other cases not provided for in the chapter on limitation, shall be filed within five years after the cause thereof shall accrue.

2. SAME.

A stockholder in a bank is not required to assume that the agents of the bank charged with the management of its affairs would make a wrongful disposition of its assets, and in an action by a stockholder to set aside a fraudulent transfer of mining stock by the bank to certain of its directors, he is not chargeable with laches for failing to discover the transfer by an examination of the bank books, where his delay in bringing the action resulted in no injury to the defendants.

3. CORPORATIONS—ACTIONS BY STOCKHOLDERS.

The general rule is that an action cannot be maintained by stockholders on behalf of the corporation unless it appears that the party bringing the action has exhausted the means of putting the corporation in motion. Where, however, the cause of action sought to be maintained on the part of a stockholder belongs to the corporate entity, it is only necessary to show that unless the action is permitted there will be a failure of justice, and that the corporation actually or virtually refuses to institute the action.

4. SAME.

In an action by a stockholder of a bank on behalf of himself and other stockholders to set aside a fraudulent transfer of mining stock by the bank to certain of its directors, a complaint that shows that plaintiff made a request upon the board of directors to bring the action and advised them of the matters of complaint, that the board refused to authorize the bank to bring the action, that one half of the board as it existed were directors who were interested as purchasers of the stock, that the interested directors controlled more than one third of the capital stock of the bank, and that under the articles of association it required the holders of two thirds of the capital stock to call a meeting of the stockholders to elect a new directory, shows a sufficient effort to induce the corporation to bring the action to authorize the action by the stockholder.

5. SAME—INJURY.

In an action by a stockholder of a bank to set aside a fraudulent transfer of mining stock by the bank to certain of its directors, a complaint that alleges that the dividends paid to defendants on the stock exceeded the purchase price paid the bank, shows a sufficient loss and injury to the bank to justify the exercise of equitable jurisdiction to undo the wrong.

6. CORPORATIONS — DIRECTORS — TRUSTEES — PURCHASE OF TRUST PROPERTY.

Directors of a corporation are trustees for the corporation and the stockholders, and cannot become purchasers of property belonging to the corporation, and in an action by a stockholder of a bank to set aside a transfer of mining stock by the bank to certain of its directors, it is no defense to the action to show that the transaction was entirely free from actual fraud, was entered into in good faith by all concerned, and was in fact for the interest of the bank.

7. CORPORATIONS—NATIONAL BANK AS OWNER OF STOCK IN OTHER CORPORATION.

Where a mining corporation was indebted to a national bank and made an assignment of all its property for the benefit of its creditors, and the assignee transferred the property to a new corporation which issued its stock to a trustee for the creditors in payment of the purchase price, the bank was the owner of its proportion of the stock held by the trustee.

8. SAME.

The act of congress prohibiting national banks from dealing in the stocks of other incorporated companies, permits them to take such stocks when pledged as collateral for a loan, or in compromise of a pre-existing indebtedness. And where a bank became the owner of an interest in a mine by an assignment of the mining company for the benefit of its creditors, it had a right to exchange this property for any other deemed more desirable, and could exchange for stock in a new company to whom the mining property was transferred.

9. SAME.

In an action by a stockholder of a national bank to set aside a transfer of mining stock by the bank to certain of its directors, it is no defense to the action to say that under its charter the bank had no authority to become the owner of the stock. If the directors violated the law in acquiring the stock that would not justify them in dealing with it differently than if it had been acquired regularly.

10. SAME.

In an action by a stockholder of a national bank to set aside a transfer of mining stock by the bank to certain of its directors, the directors cannot justify themselves by the assertion that under the laws of congress the bank could not hold the stock for a longer period than six months. Conceding the assertion to be true, if it was the duty of the directors to dispose of the stock within a limited time this might go far to show their good faith if they had acquired it in such way that their good faith was material.

11. LIMITATION—FRAUDS—TRUSTS—STATUTORY CONSTRUCTION.

Sections 2911 and 2912, Mills' Ann. Stats., must be construed together. Section 2911 limits the time within which an action based on fraud must be brought where no trust or fiduciary relations exist between the parties, and section 2912 limits the time where such relations do exist.

12. PRACTICE—PLEADING—AMENDMENT—JUDGMENT ON PLEADING.

Where a motion is made by plaintiff for judgment on the pleading, the
    defendant is not entitled to amend his answer as a matter of course
    after the court has announced judgment sustaining the motion.

13. SAME—ADMINISTRATORS.

Where a defendant dies after answer filed and his administrator is sub-
    stituted, and without a rule to answer on the administrator and
    without answering or applying for leave to answer or amend the
    answer of his deceased, he appears and participates in the proceed-
    ings upon a motion for judgment on the pleading, he waives his
    right to answer or amend his deceased's answer, and an applica-
    tion to answer after judgment against him on the motion comes
    too late. His appearance and participation in the proceedings is
    also a waiver of the objection of misjoinder on the ground that an
    administrator cannot be joined with individual defendants.

14. PRACTICE—MISJOINDER—ADMINISTRATORS.

The rule that an administrator cannot be joined in his capacity as ad-
    ministrator with codefendants in their individual capacity, does not
    apply where an administrator is substituted in place of a deceased
    defendant, who died during the pendency of the action.

15. SALES—INCHOATE TITLE.

One who purchases an inchoate title must stand or fall by the title of
    his vendor. So when one purchases mining stock held by a trus-
    tee for the benefit of his vendor he gets only such title as his ven-
    dor has, notwithstanding he pays value and has no notice of an
    adverse title.

16. APPELLATE PRACTICE—REHEARING—NEW QUESTION.

A proposition not advanced in the original hearing of a cause will not
    be considered on rehearing.

*Appeal from the District Court of Arapahoe County.*

THIS action was commenced May 7, 1896, by appellee, as
plaintiff in the court below, on behalf of himself and other
stockholders of the State National Bank against appellants,
as defendants, except Morgan, administrator, who has been
substituted for the original defendant, Samuel B. Morgan,
deceased, to set aside a sale by the defendant bank to the
defendants McNeil, Toll, Morgan and Edward L. Raymond,
of stock of the defendant mining company, and for an ac-
counting of the money received by these defendants on account
of such stock. These defendants were directors of the bank
at the time of making such purchase. The facts upon which

he relies to maintain this action, as stated in his complaint, so far as it is necessary to notice in order to understand the question to be determined, are substantially as follows :

The plaintiff owns fifty shares of the capital stock of the bank, which consists of 3,000, of the par value of $100 each, and was such owner at the time of the wrongful acts complained of. The board of directors of the bank consists of thirteen members, a majority of whom is necessary to constitute a quorum for the transaction of business. The bank had loaned to the Agassiz Consolidated Mining Company about $75,000. The latter company, having failed, assigned its property for the benefit of its several creditors, to an assignee, who caused the property to be sold. At this sale the defendant, E. B. Hendrie, purchased on behalf of the creditors of the Agassiz company. Thereafter the defendant corporation, the Wolftone Consolidated Mining & Milling Company, was created for the purpose of receiving conveyances of the property purchased by Hendrie, as trustee, for the joint benefit of the several creditors of the Agassiz company, and issuing to them shares of stock proportioned to their interest in the property so purchased; under this arrangement the shares of the Wolftone company stock involved in this action were issued to the defendant Hendrie in trust for the bank. This stock never was issued to the bank, its right and the right of others thereto being still evidenced by such declaration of trust. December 11, 1891, a special meeting of the board of the bank was held, at which eleven members were present, including the directors above named. At this meeting and the one held the following day, at which the same directors were present, an arrangement was effected whereby the mining stock was sold to Morgan for the sum of $86,000, payment therefor to be made in four equal instalments, of six, twelve, eighteen and twenty-four months, to be represented by promissory notes acceptable to the bank. The defendants, Toll, McNeil, Edward L. Raymond and Quentin (who was also a director and present at the above meetings), were interested in this sale as purchasers. There-

after the sale was consummated, and the individual defendants, who were then directors (except Quentin), executed and delivered their notes to the bank in accordance with the terms of purchase by Morgan. These notes were held by McNeil and not entered on the records of the bank. About June 29, 1893, the dividends upon the mining stock had discharged them, except a small balance, for which the obligors gave their notes, which were duly entered on the books of the bank. The Wolftone property is very valuable. Since the purchase large bodies of valuable ore have been discovered and extracted by lessees under leases obtained from the Wolftone company prior to the sale of the stock in question. The dividends to the purchasers of the stock is largely in excess of the sum paid therefor. After the sale it was agreed between the purchasers that Hendrie should continue to hold the stock in trust for their benefit. Raymond has transferred his interest to his wife without consideration, who took it charged with knowledge of the above facts. The directors making the purchase are charged with actual, active fraud in connection with the transaction. The sufficiency of the averments in this respect is not challenged, and it is unnecessary to state them, either in substance or detail. Plaintiff had no notice or knowledge of the facts upon which he predicates his cause of action, until within six months prior to the time he brought this suit. No meeting of stockholders of the bank for the purpose of electing directors has been called or held since the annual meeting of 1894. The number of directors has been reduced to eight, and consists of the defendants McNeil, Toll, Morgan, Raymond and four others. The only officer of the bank is the defendant McNeil, as president.

By the articles of association of the bank, it is provided that an annual meeting of the shareholders for the election of directors shall be held annually on a specified day each year. In the event of an election not being held on that day, it may be held on any other designated by the board of directors. If they fail to fix a date, the shareholders repre-

senting two thirds of the shares of stock of the bank may do so.  The defendants McNeil, Morgan, Toll, Raymond and Quentin, are the owners and control more than one third of the shares of the capital stock of the bank.   On the 4th day of March, 1896, a special meeting of the directors of the bank was called for the purpose of acting upon the request of certain shareholders, to bring an action to recover its interests in the Wolftone stock, at which meeting there were present, as directors, the defendants McNeil, Toll, Morgan, Gilluly, Lewis and Hallack.   At this meeting plaintiff and other stockholders presented a written statement to the board setting forth, in substance, as it is alleged, the facts as above stated, relative to the sale of the Wolftone stock, with the request that the board authorize and direct an action to be brought by the bank against the defendants who, as directors, participated in the transaction, and others who had become interested in the stock of the Wolftone company.   Upon the presentation of this statement and request, it was moved by Lewis, and seconded by Hallack, that an action be brought. The defendant Toll, as a substitute for this motion, moved that the stockholders presenting the request be required to present to the president of the board the written statement of certain of the directors who were present when the sale of the stock was consummated, but who had no personal interest in the purchase, with reference to the matters and things set forth in the request.   The president called for a vote upon the substitute, and of those present but three voted, namely, McNeil, Morgan and Toll, who voted in favor of the substitute.   The president declared the substitute adopted, and refused to call for a vote upon the motion of Lewis. Director Gilluly refused to take any affirmative action for the reason that his personal and business relations with one or more of the defendants charged with having fraudulently obtained from the bank the stock in question would not permit his acting in the matter.   Director Hendrie also refused to act for a like reason.

To this complaint the defendants, except the Raymonds,

filed a general demurrer, which was overruled. Thereafter the defendants answered, from which it appears they admit the purchase of the stock in question by the defendants Morgan, Toll, McNeil and Raymond, substantially as charged in the complaint as to time, parties and terms, but deny the averments of the complaint by which it is sought to establish that they were guilty of any actual, active fraud in effecting such purchase. On behalf of the Raymonds it is averred that Mrs. Raymond has purchased the interest in the stock belonging to her husband for a full consideration without any notice whatsoever of any of the facts set forth in the complaint. It is also averred that many of the shares purchased by McNeil and Morgan have been sold or pledged for a valuable consideration prior to the time this suit was instituted. The defendants admit that prior to the time this case was commenced a sum considerably in excess of the amount paid for the stock had been paid in dividends thereon, which they have received. They also aver that plaintiff had full notice of the facts and circumstances of the sale to them more than three years prior to the commencement of this action. As a further defense they plead that plaintiff's cause of action accrued more than three years before he brought his suit.

Upon the filing of these answers plaintiff moved for an interlocutory decree, for the reason that it appeared from the complaint and answers that the defendants Morgan, McNeil, the Raymonds, Toll, Quentin and Hendrie hold and possess the stock in question in trust for the State National Bank and its stockholders, and also requested that a referee be appointed by the court to ascertain the sums of money received by the defendants or either of them as dividends on account of such stock. Thereafter the defendant, Samuel B. Morgan, died, and on motion of the plaintiff, Edward B. Morgan, his administrator, was substituted in his place as a defendant, and the action ordered continued in his name. Plaintiff then filed another motion for an interlocutory decree in the same form as theretofore filed, except that the

name of the administrator was inserted in place of Morgan, deceased. The motion was sustained. After the court announced its judgment on the motion for an interlocutory decree, the defendants, except Morgan, administrator, and the two corporations, moved for leave to file an amendment to their answers, in which was given what purported to be a history of the transaction with the Agassiz company, and other facts stated from which the conclusion might be deduced that the purchase by the defendant directors was in good faith, for a full consideration, and for the benefit of the bank. The defendant Morgan, as administrator, moved for leave to file a similar answer, and averred that deceased had sold certain shares of the stock to parties named. He also sought to raise the question that there was a misjoinder of parties in this suit, and that not having pleaded prior to the date when judgment was ordered on the pleadings, he should now be permitted to answer. No showing was made in support of either application. The administrator had appeared and participated in the argument of motion for the interlocutory decree. Each of these amendments was refused. Upon the coming in of the referee's report, a judgment was entered annulling the sale of the Wolftone stock to the defendant directors, and for the amount against the several defendants, except the corporations, and Hendrie, trustee, respectively received over and above the amounts of the original indebtedness to the bank as it existed at the time of the purchase, and against Hendrie, trustee, for the amount of dividends in his hands received on account of such stock. From this judgment the defendants appeal. To reverse this judgment, and the interlocutory decree, counsel for defendants rely upon the following propositions, which, for convenience, will be considered in the order named:

1. That the complaint does not state facts sufficient to constitute a cause of action in this, (a) because it appears that the plaintiff was guilty of laches; (b) that plaintiff did not state the necessary facts entitling him to maintain this action on behalf of himself and other stockholders; (c) that he failed

·to show any injury which would justify the exercise of equitable jurisdiction.

2. That the motion for judgment on the pleadings should not have been sustained because the averments of actual, active fraud in the complaint were denied by the answers.

3. That the action was barred by the statute of limitations.

4. That the defendants, McNeil, Toll, Raymond, Quentin and Hendrie should have been allowed to amend their answers.

5. That the defendant Morgan, as administrator, should have been allowed to plead.

6. No judgment should have been entered against the administrator in his representative capacity and against the other defendants as individuals.

Messrs. THOMAS, BRYANT & LEE, Mr. WILLARD TELLER, Mr. J. F. VAILE, Messrs. ROGERS, CUTHBERT & ELLIS, Mr. WM. R. BARBOUR and Mr. CHAS. H. TOLL, for appellants.

Mr. PLATT ROGERS, Mr. JOHN F. SHAFROTH and Mr. GEORGE ROGERS, for appellee.

MR. JUSTICE GABBERT delivered the opinion of the court.

1. In considering the demurrer to the complaint, we shall determine its sufficiency only in the particulars argued by counsel for the defendants. The first of these relates to the question of laches. The sale of the stock took place about December 11, 1891. This action was commenced May 7, 1896. Plaintiff avers he had no knowledge regarding this sale, or of the frauds charged until within a few months prior to the time he brought this suit. It appears, therefore, to have been brought within the statutory period for relief upon the ground of fraud, under section 2911, Mills' Ann. Stats., which provides that actions based upon fraud shall be commenced within three years after the discovery by the aggrieved party of the facts constituting such fraud. If section 2912,

Mills' Ann. Stats. controls, then it was brought in time, for that section provides that bills of relief, in case of the existence of a trust, not cognizable by the courts of common law, and in all other cases not provided for in the chapter on limitations, shall be filed within five years after the cause thereof shall accrue. The pertinent question, then, is, does it appear upon the face of the complaint that plaintiff has been guilty of such delay in bringing his action that it would be inequitable and unjust to the defendant directors to permit him to now prosecute it? 12 Enc. Law, 545; *Great West Co. v. Woodmass*, 14 Colo. 90; *Hamilton v. Dooly*, 49 Pac. Rep. 769; *Great West Co. v. Woodmass*, 12 Colo. 46; *Dunne v. Stotesbury*, 16 Colo. 89.

It is contended by counsel for defendants that it appears from the allegations of the complaint that plaintiff has been negligent in ascertaining the facts upon which he now relies to avoid the sale of the Wolftone stock, and that by the exercise of a reasonable degree of diligence upon his part these facts could have been ascertained at a much earlier date than they were; that an examination of the records of the bank would have disclosed the transaction of which he now complains, and that it would be inequitable to permit him to maintain this action, although brought within the statutory period. Considerable stress is also laid upon the fact that mining stock is of an uncertain and fluctuating value.

A party cannot be negligent in ascertaining facts upon which he bases his right of action in cases of the character under consideration. This, however, is but a general rule, for the laches which will bar a recovery in a particular case depends to a considerable extent upon the character and nature of the circumstances connected with the transaction. *Brown v. Wilson*, 21 Colo. 309; *Sullivan v. Portland R. Co.*, 94 U. S. 806; *Townsend v. Vanderwerker*, 160 U. S. 171.

The reason that the doctrine of laches obtains and may be interposed as a defense in actions of this kind, is, that parties against whom a suit is brought shall not be injuriously affected by delay in bringing it, or their position altered to

their prejudice thereby. 12 Enc. Law, 544, 549 ; *Old Colony Co. v. Dubuque, L. & T. Co.*, 89 Fed. Rep. 794 ; *Galligher v. Cadwell*, 145 U. S. 368 ; *Chase v. Chase*, 37 Atl. Rep. 804.

According to the averments of the complaint, the transaction would not have been disclosed by any examination of the records of the bank. Conceding, however, that by the exercise of ordinary diligence upon the part of the plaintiff, in connection with the affairs of the bank, he could have acquainted himself with the sale, we are not aware of any rule of law which would require him to take these steps. He certainly was not required to assume that the agents of the bank charged with the management of its affairs would make a wrongful disposition of its assets, nor does the law impose upon him any obligation to examine into the affairs of the bank for this purpose. If, in fact, the defendant directors have been wrongdoers, their relation to the plaintiff and the bank was such that they are not in a position to impose upon the plaintiff any considerable degree of vigilance in ferreting out their wrongs as a condition precedent to his right to maintain an action against them on account of their wrongful acts. *Fitzgerald v. Fitzgerald Const. Co.*, 62 N. W. Rep. 899 ; *Jenkins v. Hammerschlag*, 56 N. Y. Supp. 534; *Montgomery Lake Co. v. Lahey*, 25 So. Rep. 1006.

It does not appear that defendants have been misled to their injury by the failure of plaintiff to acquaint himself with the facts connected with the transaction at an earlier date. They have expended no money in the development of the Wolftone property nor incurred any obligations in connection with the stock further than giving their notes for its purchase. This has all been fully repaid in the way of dividends. Its value has not been enhanced by the expenditure of any money or effort on their part. The stock is still held in trust ; their position is such that they can be placed in *statu quo*. Their liability upon the notes which they gave the bank for the stock was not increased by any act on the part of plaintiff. In brief, none of the reasons which would permit them to invoke the doctrine of laches as a defense to

this action appear upon the face of the complaint, either affirmatively or by implication.

The usual rule is, that an action cannot be maintained by stockholders on behalf of the corporation unless it appears that the party bringing the action has exhausted the means of putting the corporation in motion. 4 Thompson's Corporations, §§ 4499–4500; *Dimpfell v. O. & M. Ry. Co.*, 110 U. S. 209. Where, however, the cause of action sought to be maintained on the part of a stockholder belongs to the corporate entity, it is only necessary to show that unless the action is permitted, there will be a failure of justice, and that the corporation actually or virtually refuses to institute the action which the stockholder seeks to maintain. *Miller v. Murray*, 17 Colo. 408; *Majors v. Taussig*, 20 Colo. 44; *Jones v. Pearl Co.*, 20 Colo. 417. The showing which he must make is largely dependent upon the attitude assumed by the directors of the corporation, and their connection with the wrongs sought to be redressed. 2 Beach on Corporations, § 886.

From the averments of the complaint it is clear that plaintiff has brought himself within these general rules. He has made a request upon the board of directors to bring this action; has advised them regarding the matters of which he complains, and on account of which he says a suit should have been instituted in the name of the bank. A motion to authorize the latter to bring one was met by a substitute declared carried. The directors to whom his communication was addressed, while not affirmatively refusing to direct an action to be brought in the name of the bank, have impliedly done so. One half of the board as it existed at the time this request was presented were directors who were interested in the purchase, and therefore would object to any such action being brought. They represent more than one third of the entire capital stock of the bank. It is not to be presumed that they would have called a special meeting of the stockholders, if requested, for the purpose of electing a new directory. Any further efforts on behalf of the plaintiff, according to his statements, for the purpose of inducing an action in

the name of the bank would have been unavailing. The law does not require steps to be taken which, it is manifest, would be useless. *Landis v. Sea Island Hotel Co.*, 31 Atl. Rep. 755; *Smith v. Dorn*, 30 Pac. Rep. 1024; *Higgins v. Lansingh*, 40 N. E. Rep. 362; *Kneep v. Bohmrich*, 23 Atl. Rep. 118.

The alleged fraudulent conduct on the part of the defendants who purchased the stock has worked a substantial injury to the corporation, for the reason that except for this fraud, the bank would have realized a much larger sum from the dividends paid on the Wolftone stock than the amount received as a consideration for its sale. For this reason the injury shown, which resulted from the alleged frauds perpetrated by the purchasing directors justifies the exercise of equitable jurisdiction to undo the wrong. 4 Thompson's Corporations, § 4492.

2. The cause of action in this case is based upon two grounds, which, under the rules of pleading, should have been stated in two counts. The first ground is, that the directors purchasing were guilty of a constructive fraud by reason of their relationship to the bank at the time of such purchase; and second, guilty of actual active fraud in effecting the purchase from their codirectors of the stock in question. The facts upon which plaintiff relied to establish the constructive fraud were not denied; those tending to show actual fraud were. On the part of counsel for appellee, it is contended that as the facts constituting the constructive fraud were admitted, the motion was properly sustained. Their reason for this position is, as stated in their brief: "The directors were trustees. The assets, including the stock in question, were a trust fund. The stockholders were beneficiaries or *cestuis que trust*. In their dealings with the assets, the directors were subject to all the rules of equity applicable to trusts and trustees. In the absence of authority from the stockholders, they were absolutely incapacitated from selling the assets to themselves, or to one or more of their number, either directly or indirectly." On the part of the defendants, their counsel contend that as to directors,

the above doctrine does not apply, and that the transaction could not be avoided in the absence of proofs tending to establish actual fraud, or at least, that they should have been permitted to show, or to amend their pleadings so as to show, that the transaction was *bona fide.* The first question which is naturally presented, is, what are the legal relations between the directors of a corporation and its stockholders? Upon this proposition the courts have universally held that the relationship to the legal entity which they represent and its shareholders, is fiduciary, and treat them as trustees in this respect. 3 Thompson's Corporations, §§ 4009–4010 ; 2 Cooke on Corporations, § 648 ; 1 Perry on Trusts (4th ed.), 207 ; *Twin-Lick Oil Co. v. Marbury,* 91 U. S. 587 ; *Butts v. Wood,* 37 N. Y. 317. Such being the relationship between the defendant directors and the stockholders of the bank, the familiar rule is invoked that a trustee cannot become the purchaser of trust property.

This proposition is not seriously controverted by counsel for defendants, but they insist that on account of the interest which the directors have in the corporation they represent, and incidentally their interest in the subject-matter of the trust, which it is their duty to execute, as, also, the exigencies which have arisen by reason of the multiplication of corporations, and that a large part of the business of the country is now carried on by this means, that the ordinary rules governing trustees as between themselves and their *cestuis que trust* have been relaxed. In support of this proposition many authorities have been cited. A careful examination and analysis of these cases make it clear that as to transactions of the character under consideration there has been no relaxation whatever of the rule prohibiting directors of corporations from purchasing trust property. In other words— not a single one of the cases relied upon support the proposition that the purchase by directors of their codirectors of property of the corporation which they represent has held that the legality of the transaction, when attacked by the corporation or a shareholder (and the directors are not the

sole stockholders of the corporation), depends upon the good faith of the purchasers, or that they can be permitted to make a showing to that effect as a defense to an action based upon a constructive fraud. It would be impracticable to notice these cases in detail, but it is sufficient to say that the facts in those several cases were essentially different from these now under consideration in these particulars : That the contract entered into between the corporation and certain directors through other directors was of an entirely different nature from that in the case at bar ; that the contract was entered into with the whole body of the corporation, namely, its shareholders ; that while in some instances the *bona fides* of the transaction was considered, the decision was based upon circumstances intervening between the date of the contract and the time when an action was commenced to avoid it ; or, finally, that the validity of the transaction was questioned by a third party.

From an examination of the authorities cited, on behalf of appellee, we are convinced that as applied to the facts of the case at bar, namely, a consideration of the relationship of the directors purchasing to the bank at the time they made this purchase, that the rule contended for by his counsel has not been relaxed in the slightest degree. In 1 Perry on Trusts (4th ed.), § 207, it is said :

" The directors of corporations are trustees and agents of the shareholders and of the corporation, and the same rules are applied to the contracts of directors with the corporation as are applied to the dealings of other parties holding a fiduciary relation to each other."

In the same section, in discussing contracts of trustees with the corporation, it is said :

" Contracts of trustees are of two classes—one class consists of contracts made by trustees with themselves or with a board of trustees or directors, of which they are members. These contracts are void from the fact that no man can contract with himself."

Cooke on Stockholders, at § 653, says :

" The law is well settled that a director's purchase of property from a corporation is voidable at the option of the corporation, even though the directors paid fully as much as, or more than, the property is worth."

Many quotations of a similar character from the text writers and the opinions might be made. The reason why the rule obtains as between trustees and *cestuis que trust* is, that a person cannot be a purchaser of property and at the same time the agent of the vendor. The two positions impose different obligations, and their union would at once raise a conflict between interest and duty, " and constituted as humanity is, in the majority of cases duty would be overborne in the struggle." *March v. Whitman*, 21 Wall. 178.

This prohibitory rule was adopted to prevent fraud and remove the temptations which might be offered in case a trustee was himself permitted to purchase the subject-matter of his trust. If persons occupying a fiduciary relation should be permitted to take advantage of knowledge acquired in that capacity, it is easy to understand that self-interest might prompt them to conceal their information, and not to exercise it for the benefit of persons relying upon their integrity. Again, if this were not the rule, it is evident how difficult it would be for the *cestui que trust* to show actual fraud in order to avoid the transaction, or how comparatively easy it might be for the trustee to show the *bona fides* of the transaction, when, in fact, if the truth were known, it was tainted with fraud.

The fact that the number of corporations has rapidly increased within the past few years, and a large volume of the business of the country is now carried on in this way, is no reason why the strict rule, as between trustee and *cestui que trust* as applied to the facts in this case should be modified in any particular. On the contrary, the very fact that a large amount of capital is invested in corporation, that shareholders are scattered who must depend entirely upon the integrity of the directors, that the latter are the managers and familiar with its assets, their values and the opportunities which the

corporation may have to make profits in certain directions, demand that the rule should be enforced with all its rigor, otherwise, the opportunities to commit frauds through channels which the policy of the law requires shall remain closed, would be augmented, because of the increased relations of trustee and *cestui que trust.* Any deviation from this doctrine would result in placing the affairs of a corporation practically at the mercy of the few who happened to be selected as its directors. They could speculate with its assets with impunity, and in many instances would be able to render it impossible for their beneficiaries to establish that they had been guilty of any breach of trust in so doing. As clearly supporting the views above expressed, the following authorities are cited: 1 Perry on Trusts (4th ed.), § 427; 2 Pomeroy's Eq. Jur. §§ 957–8; Morawitz on Corporations, § 517; Story on Agency (8th ed..), §§ 210–211; Story's Eq. Jur. § 322; 3 Thompson's Corporations, § 4010; *Michoud v. Girod,* 4 How. 503; *Davoue v. Fanning,* 2 Johnson's Ch. 252; *Cumberland Coal Co. v. Sherman,* 30 Barb. 553; *Munson v. Syracuse Ry. Co.,* 8 N. E. Rep. 355; *Duncomb v. N. Y., H. & N. R. Co.,* 84 N. Y. 190; *People v. Twp. Board,* 11 Mich. 222; *Flint Ry. Co. v. Dewey,* 14 Mich. 477; *Cook v. Berlin Mill Co.,* 43 Wis. 433; *Goodin v. Cin. Canal Co.,* 18 Ohio St. 169; *Gerry v. Bismark Bank,* 47 Pac. Rep. 810; *Higgins v. Lansingh, supra;* Underhill on Trusts & Trustees (Am. ed.), 325; *Stanley v. Luse,* 58 Pac. Rep. 75; *Schetter v. Southern Imp. Co.* 24 Pac. Rep. 25.

Applying these principles and reasons, it is clear that the purchase of the stock in question cannot be upheld, even though the defendants were able to show that the transaction was entirely free from fraud, was entered into in good faith by all concerned, and was, in fact, for the interest of the bank. The stock belonged to the bank; none of the shareholders, except the directors participating in the transaction, were consulted regarding its sale; part of the directors attempted to sell to others; and a stockholder attacks the validity of the contract thus made.

On behalf of defendants it is also urged that the bank held the mining stock as collateral security for the payment of its indebtedness against the Agassiz company; that it was prohibited from purchasing such stock, and even if it was the owner, it could not hold it for a longer period than six months, if it could realize the actual cost, which, in this instance was the amount of the indebtedness of the Agassiz company. It certainly was the owner of this stock. The inception of the transaction by which it became the owner was a loan to the Agassiz company. The latter made an assignment for the benefit of its creditors. The assignee sold the property to the defendant Hendrie, as trustee, for the benefit of the creditors. Later the Wolftone company purchased the property, issuing in payment therefor shares of its capital stock to Hendrie as trustee. Under this arrangement, the stock in question was held by the trustee for the benefit of the bank. That this made it the owner of such stock is beyond dispute. It became such by the transfer of the property of the Agassiz company, in which it was interested as a creditor of the latter. Whether the transaction satisfied the indebtedness of the Agassiz company in whole or in part, or how the bank may have treated the matter in this respect, is immaterial in this suit. Such question might properly have been raised by the Agassiz company in the event the bank was attempting to enforce its claim against this company on account of the original loan. The act of congress under which the bank was organized prohibits national banks from dealing in the stocks of other incorporated companies, but does permit it to take such stock when pledged as collateral for a loan, or in compromise of a pre-existing indebtedness. The provision relative to real estate, except such as the bank may hold for its immediate accommodation in which to transact its business, is similar. Being the owner of an interest in the mining property assigned by the Agassiz company, it had a right, by virtue of its incidental powers, to exchange this property for any other species which it might think was more desirable. Concede, however, that

under its charter it had no authority to become the owner of this stock, that cannot affect this transaction. It was, in fact, such owner, and if its directors had violated the law by making the exchange they did, they would not be justified in dealing with this stock in any manner different from that required if the transaction had in all respects been regular.

It is asserted that under the act of congress relative to national banks and the laws of this state, the bank could not hold the stock beyond a specified period, if it was possible to realize its actual cost. Concede this is a correct proposition, it cannot avail the defendants. In disposing of property which, under the laws governing banking corporations, it is the duty of such concerns to convert into money, the same conditions under which the purchase of such property may be made by directors applies as in other cases. If it is the duty of the directors to make such sale, this is a circumstance which might have been given great weight in determining the *bona fides* of the transaction, if they had made the purchase from the stockholders instead of dealing with the directors only.

3. In his complaint, plaintiff pleaded facts from which it appeared that the action was brought within three years after the date of the discovery of the frauds charged. An issue having been made upon this question, it becomes necessary to determine which section of our statute of limitations applies. Section 2911, Mills' Ann. Stats. provides:

"Bills for relief on the ground of fraud shall be filed within three years after the discovery, by the aggrieved party, of the facts constituting such fraud, and not afterwards."

Section 2912, Mills' Ann. Stats. reads:

"Bills for relief in case of the existence of a trust not cognizable by the courts of common law, and in all other cases not herein provided for, shall be filed within five years after the cause thereof shall accrue, and not after."

It is conceded that the action was brought within five years after the purchase was consummated. In the abstract, section 2911, *supra*, imposes a limitation within which actions based upon fraud must be commenced. Section 2912, *supra*,

limits the time within which actions based upon the existence of a trust must be instituted. There is no other provision limiting the time within which this action should have been commenced, unless it is section 2911, *supra*. These two sections must be construed together, and when so read, it is evident where the relation of trustee and *cestui que trust* exists, it was the intention of the legislature to give the latter the right to bring an action against the former which involved a trust at any time within five years after his right to do so accrued; but in other cases based upon fraud, where the subject-matter of the action did not involve a trust, the action must be brought within three years. In brief—the former section applies to frauds perpetrated by those not bearing a fiduciary relation to the party defrauded—the latter to cases where the trust relation exists between the parties to the action. *Wilson v. Brookshire*, 25 N. E. Rep. 131.

4. After the court announced its judgment on the motion for an interlocutory decree, the defendants, except the bank and the mining company, tendered an amendment to their answers, which was refused. These defendants cannot complain of this action of the trial court for two reasons: (1) For reasons already given, those answers did not present any defense. (2) They were tendered too late. A defendant against whom a motion for judgment on the pleadings is interposed is not entitled to amend his answer as of course, after the court has announced a judgment adverse to him upon such motion. The defendants should at least have made a showing in support of their application to amend their answers. Sec. 75, Code. This they did not do.

5. The foregoing disposes of the contention of the defendant, Morgan, as administrator, that he should have been allowed to plead, except as to the questions raised by his answer that he was a defendant in his administrative capacity, while the others appeared individually, and that a part of the stock in controversy had been disposed of by deceased prior to the time this suit was commenced. This defendant appeared by counsel and participated in the presentation of the motion for

the interlocutory decree. If he desired to amend his answer, he should have applied for leave so to do at this time, or before. The action commenced against deceased did not abate by reason of his death. It became the duty of the administrator to defend. Under our code (sec. 15), he was properly made a party defendant. The misjoinder which may be taken advantage of by demurrer, if it appears upon the face of the complaint, or by answer if not, does not apply to cases where an administrator is substituted in place of a deceased defendant. The original answer filed by deceased asserted that a part of his stock had been sold or pledged. To whatever extent this plea constituted a defense, it could be asserted under the original answer of deceased as fully as that tendered by the administrator, upon the trial of the questions remaining undisposed of after the interlocutory decree was ordered. The title to the stock was still in Hendrie, trustee, and if the parties purchasing did not see fit to make a defense, the administrator could not make one for them.

6. The administrator being a proper party defendant, it necessarily follows that a judgment could be pronounced against him in his representative capacity.

One further question is presented for determination, namely, could a judgment properly be entered against Mrs. Raymond, she having denied that she purchased her shares of stock with notice of the facts which rendered the purchase by her vendor illegal? She only purchased the equitable title, for that was the only title vested in her husband. One who purchases an imperfect or inchoate title must stand or fall by the title of his vendor. *Sargent v. Ingersoll*, 7 Pa. St. 340; *Shirras v. Caig*, 7 Cranch, 35; Wade on Notice, § 18.

This disposes of all the questions presented by counsel for defendants, and finding no error in the record, the judgment of the district court must be affirmed, and it is so ordered.

*Affirmed.*

### ON PETITION FOR REHEARING.

PER CURIAM. On the part of the appellant administrator,

it is insisted that he could not be joined with his codefendants for the reason that an adminsitrator cannot be joined with other defendants who are sued in their individual capacity. We think this contention was fully answered in the main opinion. Another reason, however, exists why this appellant is precluded from raising this question at this time. He was duly substituted defendant in his representative capacity. Thereafter, on March 2, 1898, the record recited, under the caption " *King v. Morgan, Administrator et al.*," that the cause was heard on the motion of plaintiff for an interlocutory decree, and that the parties to the action appeared by their respective attorneys. This certainly indicates that the administrator was present by counsel. The following day, according to the record, the motion was sustained, and an order entered that a decree be prepared accordingly. March 10, 1898, he applied for leave to answer the complaint. The application was taken under advisement, and denied April 6. No rule had been entered requiring him to plead, but appearing and participating in the argument on a motion for a judgment on the pleadings must be regarded not only a waiver on his part to plead, but a waiver of the right to raise the question of misjoinder. In the original opinion an expression was used which might indicate that the application of the administrator was for leave to file an amended answer. In a sense this is not correct, and yet the answer he asked leave to file, though the first tendered in his representative capacity, was, in fact, an amendment to the answer theretofore filed by Samuel B. Morgan, deceased. This application was before the interlocutory decree, in its details, was entered, but after it had been ordered. It came too late.

The objection to the judgment because it is joint, is not tenable. The interlocutory decree, if objectionable in this respect, is cured by the final decree, which is the controlling one. In the latter the judgment, so far as it affects the administrator, is limited to a specific sum, the same as against the other defendants.

On behalf of the other appellants, it is suggested that, ac-

VOL. XXVII — 36

cording to the opinion, they stand charged with having committed a gross fraud. All questions of fraud in fact, of a character involving moral turpitude, are eliminated from the case. The averments of the complaint on this subject were denied. So far as the decision of the main question is concerned, i. e., the validity of the transaction, it is based entirely upon the proposition that the relation of these appellants to the bank was such, that the law inhibited the purchase by them of the subject-matter in controversy.

It is also urged that certain of the directors of the bank, who acted on its behalf in making the sale of the mining stock in question, should not be permitted to participate in any proceeds realized from such stock by the bank, because they themselves were guilty of a wrong, and that the cause should be remanded, with directions to ascertain who are the innocent stockholders, and a decree entered that they alone are entitled to participate in the fruits of the judgment. Without indicating any opinion on the question of law suggested, it is sufficient to say that this order cannot be made for several reasons : This proposition was not advanced in the original hearing and cannot be urged on rehearing ( *City of Durango v. Chapman*, 60 Pac. Rep. 635 ; *ante,* p. 169 ; *Orman v. Ryan,* 25 Colo. 383 ; the object of the action is not to distribute the proceeds realized from the stock among the shareholders of the bank ; the directors in question are not parties to this action.

The petition for rehearing is denied.

*Petition denied.*