[No. 3843.]

## BURNS v. NATIONAL MINING, TUNNEL & LAND Co. ET AL.

1. APPEAL—*Adjustment by Parties—Discontinuance.* An appeal will not be dismissed on suggestion of a settlement of the controversy by the parties, unless it appears that the adjustment included all the parties, and all the matters in issue.

2. CORPORATION—*Dealing With Directors.* The Board of Directors of a solvent corporation may, acting in good faith, borrow money from one of their own number and evidence the loan by a note of the corporation, and secure the same by mortgage of the corporate properties.

If the vote of the director making the loan is necessary to constitute a quorum and a majority voting to authorize the loan, the transaction is voidable at the instance of the corporation, or its stockholders; and a court of equity will set it aside, regardless of the question of good faith. But the transaction is valid in law, and a recovery may be had thereon, so long as no objection is made, and no action taken assailing its validity.

And if the money was received by, and used for the benefit of the corporation, the director making the loan may recover it.

And the corporation or a stockholder assailing the transaction in equity must do equity by an offer to return the money.

3. PAYMENT—*What Amounts To.* A corporation borrows money from a firm, two of the members of which are directors of the corporation. Collaterals are pledged to secure the loan. The collateral is sold for an amount sufficient to discharge the loan, but the lenders permit the proceeds to be used by the corporation for another purpose, and it is so used. There being no fraud or bad faith in the transaction, it does not amount to a payment.

4. PLEADINGS—*Construed.* Action by a stockholder to vacate a judgment recovered against the corporation, and set aside a sale of the corporate property had thereunder. The complaint alleged that collaterals had been pledged to secure the note upon which the judgment was recovered; that these collaterals had been sold for an amount sufficient to discharge the note, but through fraud the money had been applied to a different purpose. The answer alleged that the proceeds of the collateral had been used by the corporation for its benefit. Reply, that plaintiff has not sufficient knowledge, etc., upon which to base a relief. *Held,* a withdrawal of the charge of fraud made in the complaint.

5. FRAUD—*Conspiracy—Evidence.* A corporation had executed a note to a firm, two of the members of which were directors of the corpora-

tion, and as such had voted to authorize the loan. On the maturity of the note one of the members of the firm wrote to the corporation demanding payment, and threatening a suit if the note were not paid. Another member of the same firm replied for the corporation, refusing payment. *Held* not sufficient, without more, to establish either fraud or conspiracy.

6. —— *Ratification.* The properties of a corporation had been sold under a judgment recovered against it by a firm, two of the members of which were directors of the corporation, and had voted as such to authorize the execution of the note upon which the judgment was recovered. A new board of directors had been elected, meantime, not including any member of the partnership. This new board recognized the validity of the judgment, and sent out notices to the stockholders requesting contributions to discharge it. *Held* a ratification sufficient to validate the voidable character of the original transaction.

7. —— *How to Be Alleged.* Whoever would rely upon fraud to vacate a completed transaction must allege affirmatively and distinctively the facts upon which the conclusion of fraud is based. No one should be required to respond to the charge of fraud, made, not as a fact, but as a conclusion drawn from irresponsible hearsay.

*Appeal from El Paso District Court.* HON. R. E. LEWIS, Judge.

Mr. MURAT MASTERSON, for appellant.

Mr. C. S. THOMAS, of counsel.

Mr. K. R. BABBITT, Mr. F. L. SHERWIN, for individual appellees.

MORGAN, J.

This appeal is from a judgment on the pleadings against the appellant, for costs, in the El Paso district court, by which appellant's bill was dismissed for want of equity.

The motion to dismiss the appeal, filed in the supreme court after the appeal had been perfected, is denied. The settlement of the matters involved on the appeal and upon which the motion is based was not a complete settlement

of all the matters involved, especially as to the judgment itself, for costs. A settlement such as would justify a dismissal of an appeal must not only settle the matters involved in the original action, but must include the judgment itself, and must be made by and between the parties to the appeal who are interested in the determination and the result thereof. The case of *Geraghty v. Randall,* 18 Colo. App., 194, approaches the condition here. The cases of *Floyd v. Cochran,* 24 Colo., 489; *Mills v. Green,* 159 U. S., 651, and *Hunter v. Dickinson,* 3 Colo. App., 373, cited by appellees, contemplate a more complete disposition of the matters involved than the settlement in the pending case. Two recently decided cases—*Woodmen Assn. v. Grand Junction,* 51 Colo., 353, and *Bull v. Doss Bros. Co.,* 51 Colo., 459, are somewhat analogous to the pending case, but in each of these cases the reasons for dismissal involved the entire issue, and all the parties in the case that was appealed. In the pending case, the settlement seems not to have included either all of the parties, or all the issues.

It may be determined from the pleadings that the only purpose appellant had in bringing the suit was to annul all proceedings in a certain suit by the firm of Otis & Co., a partnership, against The National Mining, Tunnel & Land Co., a corporation, upon a certain promissory note for $1,000 given by the corporation to the partnership. The bill of complaint in the pending suit charges that the note was invalid, and also that it had been paid, and a determination of these two questions will be sufficient upon which to reach a conclusion concerning the appeal. There are other charges in the bill upon which a prayer for an accounting, the appointment of a receiver, and other relief, is based, but the right to such relief seems to rest upon the invalidity of the note and its payment, and these two questions alone will be considered.

It is claimed by the appellant that because two of the four directors present and voting when the note was authorized by the board of directors of the corporation were also members of the partnership to whom the note was made payable, and whose votes were required to adopt the resolution, and whose presence was necessary to constitute a quorum at such board meeting, such act on the part of the board was void, and the note was therefore void. The contention is that these two directors were disqualified by reason of their personal interest in the act done. It is further contended that because the partnership permitted certain shares of the capital stock of the corporation, that had been turned over to the partnership as collateral security for the note, to be sold for a sufficient amount to pay off the note, the act of the partnership, in permitting the money so derived to be used by the corporation for other purposes, amounted to a payment of the note. It is further contended that all the circumstances connected with obtaining the judgment on the note showed a conspiracy to obtain all the property of the corporation, and were tainted with fraud to such an extent that the judgment on the note is void. These are the only questions raised by the appellant in his brief. They will be disposed of in the order above indicated.

1.   A board of directors of a solvent corporation may borrow money from one or more individual members of the board and give the corporation's note for it, and even mortgage the corporate property to secure it, where the transaction is in good faith.—Cook on Stock and Stockholders, sec. 661 (citing many authorities); *Mining Co. v. Bank,* 10 Colo. App., 339. If the presence and vote of the director loaning the money is necessary to constitute a quorum and to make a majority upon such vote, however, the act is voidable at the instance of the corporation or its stockholders. The trust relation existing between the directors and the stockholders of a corporation

ought not to permit such an act, and a court of equity
will scrutinize all contracts made in this way, and set
them aside, regardless of the good faith of the transac-
tion.—2 Cook on Stock and Stockholders, sec. 653; *Mor-
gan v. King,* 27 Colo., 539; *Mosher v. Sinnot,* 20 Colo.
App., 454; *Sims v. Petaluma Gas Co.* (Calif.), 63 Pac.,
1011; 10 Cyc., 790, 791. The note given by the corpora-
tion to the partnership, and the acts of the directors in
authorizing the same, are, however, valid in law, although
they might be attacked in equity by the corporation, or
any other party having a standing for such purpose, but
this would not prevent an action at law to recover the
amount due upon the note, so long as no objection was
made and no action was taken attacking its validity.—10
Cyc., 791. The pleadings in the case at bar disclose that
judgment had been taken upon the note, execution had
been levied upon the property of the corporation, which
was sold, and a certificate of purchase issued on the sale,
before any objection was made, or any action was taken,
in that proceeding, or otherwise, attacking its validity.
There is no allegation in the bill that the money borrowed
and for which the note was given was not received and
used by the corporation for the best interests thereof,
and no offer to refund the money obtained on the note;
but the bill contains only an allegation that it was paid,
actually or constructively, by the partnership, upon a sale
of the collateral security, together with the prior allega-
tion that the act of the directors authorizing it was illegal
and void. It is true the replication denies, on informa-
tion and belief, a plea by the partnership that the cor-
poration did receive and use the money so borrowed to
pay off other valid, outstanding indebtedness of the cor-
poration, but such a plea should be met by direct and
positive denials. Therefore, it appears from the plead-
ings that the corporation owed the partnership the money
for which the note was given, and there is no bad faith,

construing the bill and the replication together, directly charged against the directors in authorizing the execution and delivery of the note. If no note or other evidence of the indebtedness had been executed at all, yet if the money was received by, and used for the benefit of, the corporation, the person furnishing the money, even though his vote as a director of the corporation was necessary to a majority vote of the directors in authorizing the loan, could sue the corporation for the money loaned and recover the amount.—*Sims v. Petaluma Gas Co., supra.*

There are many authorities on the validity of an act of a board of directors of a corporation such as that involved in this appeal, but the following extracts from 10 Cyc. seem to state the law as it now exists, and in conformity with the decisions of the courts of this state.

"While it is clear that a member of a corporation is not incapacitated by the circumstance of being a member from entering into valid contracts with the corporate body, yet where a bare quorum is assembled, no contract can be made with a member of that quorum, because such a contract requires his concurrence, and he cannot be on both sides of the same contract. As to that contract he is not a director, but is a stranger; and when he steps out of the bare quorum and assumes the attitude of a stranger the quorum is broken. Where, on the other hand, a majority of the directors vote in favor of a resolution in which one member of the board has a personal interest, the resolution is not invalid by reason of that personal interest."—10 Cyc., p. 781.

"A director cannot, with propriety, vote in the board of directors upon a matter affecting his own private interest any more than a judge can sit in his own case; and any resolution passed at a meeting of the directors at which a director having a personal interest in the matter voted will be voidable at the instance of the corporation

or the shareholders, without regard to its fairness, provided the vote of such director was necessary to the result.''—10 Cyc., p. 790.

See also *Morgan v. King,* and *Mosher v. Sinnot, supra,* where the individual directors bought property of the corporation.

Concluding that the action of the board, authorizing the execution and delivery of the note, was voidable at the instance of the appellant, yet, in his suit for equitable relief, he should ''do equity'' and offer to return the money so obtained on the note. Even a stockholder of a corporation should not be permitted to benefit by a void transaction of his corporation and come into a court of equity and appeal to the conscience of the chancellor, without first offering, or procuring his corporation to offer, to return to the party complained of, the fruits of the unlawful act.

In the case of *Mosher v. Sinnot, supra,* the court, through Gunter, J., said:

''We think the sale of the stock by the directors to appellants Mosher and Whipple constructively fraudulent and voidable at the instance of the corporation. This action, although brought by a stockholder, is really an action by the corporation to redress a corporate wrong, that is, to set aside the constructively fraudulent sale of this stock. In order to obtain this equitable relief the corporation must do equity. The complaint makes no offer to do equity with reference to Mosher and Whipple, nor does the decree make any provision for doing them equity. The decree simply provides for a cancellation of the certificates of stock held by them under this purchase. The claims of Mosher and Whipple against the corporation are not disputed, they are open accounts, they accrued more than six years ago, and are therefore barred by the statute of limitations. Were we to affirm the judgment of the lower court as to these certificates of stock

we would thereby cancel the certificates of stock, and yet not put Mosher and Whipple in the same position in which they were before they received the certificates of stock; the corporation would have back the stock and at the same time have annulled perforce the statute of limitations the claims of Mosher and Whipple against it. This result would be manifestly unjust. The complaint failed to state facts sufficient to constitute a cause of action in that it failed to offer to do equity with reference to Whipple and Mosher. The decree was bad in that it cancelled the certificates issued to Whipple and Mosher without requiring the corporation to do equity with reference to their claims."

It may be contended that appellant was relieved of the necessity of· alleging this offer to "do equity" by the allegation that the note had been actually or constructively· paid. Such supposed contention requires the consideration of the next question, as to whether the note was so paid, or at all.

2. The contention of appellant, that the note was paid, when the collateral security was sold for an amount sufficient to pay it, is untenable. The pleadings show quite conclusively that the partnership sold the collateral, and permitted the corporation to use the money derived from the sale for the purpose of paying other outstanding and valid indebtedness. This amounted to nothing more than a release by the partnership of its claim on the collateral, and left the note with no security. The bill does not state any facts to put this in issue,—the good faith of the partnership in releasing the collateral—but simply states that sufficient funds were realized on the sale of the collateral to pay off the note, and, through fraud, was not applied to such purpose. This naked charge, however, when the partnership answered, admitting that it had sold, or permitted the sale of, the collateral, and pleaded that the money was used by the corporation for

its benefit, was modified in the replication to the averment that the appellant did not have sufficient knowledge or information upon which to base a belief as to this plea. This was a practical withdrawal of the charge of fraud, if any had been sufficiently made, in the bill. There is no reason why the partnership could not relinquish its hold upon the collateral if it so desired. It would not in any way prejudice the corporation or its stockholders if the money derived from the sale of the collateral was used for the benefit of the corporation. The entire pleadings show appellant to have been without equity in this regard as well as in regard to the validity of the note. His bill should have, at least, stated that he, or his corporation, stood ready to pay the indebtedness, in case the court should find that it had not been paid.

3. The contention of the appellant, that a conspiracy existed between the corporate directors and the members of the partnership, and that all the circumstances connected with obtaining the judgment on the note were tainted with fraud, does not sufficiently appear from the pleadings. It does appear that the partnership at Colorado Springs wrote the corporation at Denver that its note of $1,000 must be paid, or suit would be brought, and the corporation answered that it had no funds, and that it was obliged to refuse payment, and that the writers of the letters were each members of the partnership; yet this, alone, without further charges, would not constitute fraud, nor establish a conspiracy, as it is not denied in the replication, except on information and belief, that a few days before this suit was brought, the directors of the corporation sent out notice to all of the stockholders notifying them that all the property of the company was sold at sheriff's sale to satisfy the judgment that had been obtained upon the note, and that the property ought to be redeemed from the sheriff's sale (although plaintiff denies that any such notice was sent to him), that about

a month later a new board of directors was elected for
the corporation, not including any member of the partner-
ship, and that these directors recognized the validity of
the note and sent out notices to all the stockholders re-
questing contributions sufficient to pay off the judgment
upon the note.  It also appears that the new board of di-
rectors, acting for the corporation, filed a separate an-
swer and cross-complaint, in which they do not deny the
validity of the note, but charge, as was charged in the
bill, that sufficient funds were realized from the sale of
the collateral to pay off the note, and charge that it was
the duty of the partnership, under the terms of the col-
lateral agreement, to have applied this money to the pay-
ment of the note.  As the act of the corporate directors
in authorizing the execution of the note was voidable
only, this action on the part of the new board of directors
in filing its separate answer admitting the validity of the
note would seem to be a sufficient ratification of a void-
able act to make it valid.  These acts on the part of the
old and the new boards of directors, disclosed by the
pleadings, tended to destroy the claim on the part of the
appellant, that a conspiracy existed in regard to the note,
and that the circumstances were tainted with fraud.  And
as there are no direct charges to be found in the pleadings
sufficient upon which to base the suit of the appellant
concerning the charge that the note was invalid and had
been paid, it seems that nothing remained in the bill or
in the pleadings which would justify a decree in equity
in favor of the appellant.

While it is true that the acts of shrewd conspirators
are frequently clothed in the deceptive garb of apparent
legality and good faith, and their tracks artfully made to
appear the most distinct in places where no suspicion
would be aroused, yet all deceptions of such character are
absent from the allegations of the bill, or retracted by the
replication.  The direct charges of fraud and conspiracy

attempted to be made in the bill are reduced to charges upon information and belief in the replication. To use the language of the replication, replying to pleas of good faith in the answer, the appellant repeats that, "this plaintiff has not and cannot obtain sufficient knowledge or information upon which to base a relief." The charges were, as a consequence, insufficient.—*Harter v. Shull,* 17 Colo. App., 162, where the court said:

"Whether a transaction is fraudulent or not is a question of law to be determined upon the facts, and in pleading fraud the facts from which it is a conclusion must be set forth, and those facts must warrant the conclusion. * * * No person ought to be held to answer a charge of fraud which is made, not as a fact, but as a conclusion drawn from irresponsible hearsay."

All questions raised in the briefs, or discussed in oral argument, have been thoroughly considered, and if any have not been referred to in the opinion, it is not because they have been overlooked. The judgment is affirmed.

*Judgment Affirmed.*

CUNNINGHAM, P. J., KING and HURLBUT, JJ., concur. BELL, J., does not participate.